May it please the Court. Good morning, Your Honors. My name is Owen Mardekin, representing the United States. I'd like to reserve two minutes for rebuttal. There are two issues I'd like to address today, the main one being whether this Court's en banc opinion in Morales-Escuero v. Gonzales should guide the Court in this case, specifically that part of the opinion that says that the due process validity of removal by reinstatement does not depend on the validity of the underlying deportation order. Then I'd like to deal briefly with whether the alien defendant in this case, Mr. Arias-Ordonez, properly exhausted administrative remedies for purposes of his collateral attack on the first deportation. It's the government's position that Morales-Escuero v. Gonzales should guide the Court in this case, that it does properly apply in the criminal context for several reasons. First, this Court's precedent. Second, because to do so is consistent with what the Supreme Court held in Mendoza-Lopez. And third, because of the way the statute itself is worded. First, with respect to this Court's other precedent, United States v. Diaz-Luevano is a published opinion in which this Court actually did apply Morales-Escuero in the criminal context. There, what this Court did was two parts of the holding I think are particularly interesting here. Which case are you talking about now? United States v. Diaz-Luevano. That's the case in which it's a 1326 prosecution, an appeal of one, in which the Court relies on Morales-Escuero and makes two important points, I think, for purposes of this appeal. The first is the Court says that a reinstatement removal is a separate proceeding from the underlying deportation. The alien there in that case, the defendant was trying to argue that the two proceedings are inextricably linked. And so for purposes of his prosecution, the Court couldn't look at the reinstatement by itself. But Diaz-Luevano, if that's how you say it, had nothing to do with the challenge to the original removal, right? That's correct. So how is it relevant? Well, I think it's important because the Court noted that it's going to look at those as separate proceedings. For that purpose. I mean, in other words, there the question was whether the reinstatement can serve as the – as a prior removal for purposes of the 1326 statute and particularly for the sequence with a felony. But that's really a different issue. It's – the alien's mode of attack was different in that case. But I don't think the result would have been any different had the alien actually attacked the underlying deportation. Because under the reasoning in Morales and the reasoning in Diaz-Luevano is that, especially in Morales-Escuerdo, is that an alien shouldn't be allowed to break the law, basically commit a contempt, by reentering the country just in order to attack some prior deportation proceeding. There are avenues under which the alien can attack a prior deportation proceeding. If that prior deportation proceeding is actually the sole deportation alleged in the 1326 case, then under Mendoza-Lopez and 1326d, of course the alien can attack, bring a collateral attack on that proceeding. The question is, if the alien has some due process attack on that proceeding, then is removed, doesn't bring any attack at the administrative level, but then illegally reenters the country and finds him or herself in reinstatement proceedings and the reinstatement proceeding becomes part of the basis for the prosecution. Well, my understanding of what we were trying to do in Morales-Escuerdo was to make it, what can I say, to make the reinstatement proceedings more expeditious so that things didn't bog down in the reinstatement proceeding, but at the same time, if you want to challenge the underlying deportation, you do it collaterally but not in the reinstatement proceeding. That's right. So if now we turn that and say, okay, now here we are, we can never, because of the reinstatement, you can never challenge the underlying proceeding, we've just turned that on its head, haven't we? No, I don't think so, Your Honor, because I think the reasoning is actually the same. Suppose the alien in Morales-Escuerdo, after that opinion, had illegally reentered the country, had left after the reinstatement proceeding and illegally reentered the country. I think the question would be, if the alien is prosecuted under 1326, is the outcome the opposite from what this Court held in Morales-Escuerdo, or is it the same? I think it would be the same, because this Court would say the administrative proceeding, if the reinstatement is the administrative proceeding that is at the basis of the prosecution, the alien can bring a collateral attack on the reinstatement proceeding, if there's some problem with that. Frankly, the alien in Morales-Escuerdo, like the alien here. But how does the alien get to challenge the underlying order? Well, the alien can challenge the underlying order. In this case and in Morales, okay, because the alien in both cases is saying that they never received notice, they can bring a motion to reopen. So this alien, Mr. Arias, and the alien in Morales-Escuerdo could have brought a motion to reopen. But on your theory, it wouldn't have made any difference, because you still could have relied on the later reinstatements anyway. So what's the point? Yeah. Well, but the result's only the same, I mean, because the aliens illegally reentered the country. Okay? So the reason the reinstatement proceeding exists is because the alien has committed the crime of illegally reentering the country. Right. And after being deported. After being deported, correct. So your suggestion is that there's never any remedy for somebody in this defendant's situation? In this defendant's situation, the defendant — Yeah.  But that won't help him, because you say that the reinstatement is valid. It's a separate — it's a separate order that he — and he violated it by reentering. So he never gets a chance to attack the original one. Even if he was denied due process in that one. Well, he would get a chance to attack the original one through the motion to reopen. It wouldn't make a difference, because he — But it won't matter. It won't matter. On your theory, in other words, he may have been — the underlying deportation order could have — let's suppose it was really horrendously a violation of due process. He was never offered a hearing. They just came and took him. Right? And they called — and then they based the later reinstatements on that. And so he never anywhere up and down the line had a hearing or an opportunity for a hearing. On your theory, he could still be convicted based on one of the later reinstatements for coming back after having been removed. Yes. Because after that hearing, this Court doesn't excuse him illegally reentering the country. Even if he has a dispute with the previous deportation proceeding, he can't illegally reenter the country in order to challenge it. But isn't that a — a completely contradict the Supreme Court case, Mendoza-Lopez, which says that in the criminal proceedings, unlike — I mean, the basic difference is that in the criminal proceedings, you do get to do collateral attacks, and in the removal proceedings, you don't in general. Well, what Mendoza-Lopez says is that you can bring a collateral attack on the administrative proceeding that is the basis for the prosecution, which is still the case here. If the — if the reinstatement proceeding is the basis for the prosecution, he can still bring a collateral attack. I notice, Your Honors, I've got a minute left, which I'd like to reserve for rebuttal. Okay. Thank you. Elizabeth Thoth, Federal Public Defender, on behalf of Mr. Arias-Ardoniz. This — the prosecution is asking this Court for a new rule. The rule in this circuit has long been, in criminal cases, if the underlying deportation is flawed, the reinstatements cannot act as predicate elements. That was the case — I don't think we had any cases. Well, it's been the rule that's assumed. There, for instance, in Leon Paz, there was two reinstatements after the removal. The removal was deemed flawed, and it was remanded to the district court for further proceedings on the prejudice prong. There were two reinstatements in that case. Had the reinstatements been able to be used, there would have been no need for a remand. That case predates, of course, Morales-Esquerdo. But my point is, is that has been the practice. The practice in this Court, as also noted in the Alvarenga-Villalobos case, is that civil proceedings have been treated very differently than criminal proceedings. As Judge Berzon just noted, the fact that somebody cannot challenge something collaterally in a civil case has never been held to apply in a criminal collateral attack context. The question here is, does Morales change that practice? And the answer has to be no, because that would conflict with Mendoza-Lopez. The rule, as stated in Alvarenga, is Mendoza-Lopez requires judicial review of a deportation in a subsequent proceeding only when the alien was deprived of the right to judicial review in the initial proceeding. And that was the Court drawing a distinction from civil and criminal cases in that case. The government's rule would essentially mean that, as this Court just noted, aliens whose removals were flawed would not be ever allowed to challenge them in a criminal context. It's a very different situation when the government is trying to prosecute somebody and give them time for illegally reentering the country. They have a standard of proof beyond a reasonable doubt that all the elements are met, including that the deportation, original deportation, is fair. Now, I mean, the one complicating factor here for me is that the best he would have done if he had actually had full due process, as I understand it, is a voluntary departure. That's correct. So he would have left, and he and his first return would have been okay, right? I mean, it wouldn't have been okay, but he wouldn't have been able to be prosecuted for it because he wouldn't have been removed. That's correct. Then what? Then there would have been a removal proceeding at that point, presumably? I mean, I guess we don't reproduce the real like that, but in all likelihood we would be in the same place exactly. I understand what the Court's basically saying is this is a one-shot remedy. Yes. When the underlying deportation is flawed, I mean, the government, they just simply have reinstated that order. They've never given him an opportunity for another hearing. I think if they had, then this case would be in a very different procedural posture. This is a readily curable remedy. It's a low cost. The next time the government wants to prosecute this defendant, they simply provide him with a hearing after this case is over, and the government is actually incorrect. He cannot move to reopen his original deportation proceedings. I just provided the panel with a decision, Singh v. Gonzalez, that says you can't file a motion to reopen once you've been removed and you're under a removal order. So he really doesn't have a remedy at this point. And if after he receives his hearing this time, he reenters, the government can then prosecute him. The reason you can't do it is because you're out of the country, or why? It's because the regulation prohibits it, prohibits the filing. Why you're out of the country. After you've been removed, if you're subject to a removal order, you cannot reopen. There is an interest in finality. The reg does not permit that. The reopening is by definition of a removal order, so I don't understand that. I'm sorry. Say that again. By definition, the reopening is a reopening of a removal order. So how can it not be of a removal order? For example, if someone is ordered removed in absentia, never gets notice, and is floating around the country for the next 10 years, moving from place to place, they don't know they've been removed, and ICE doesn't find them. And then ICE finds them. They've not physically been removed. Then they can file a motion to reopen, even though 10 years have passed since the original in absentia order issued, if they can show they never got notice. That's where that you can file a motion to reopen at any time language kicks in. However, if they were to find you, find that same person within a year, and that person did not move to reopen, and they were deported, they can't then file a motion to reopen under the regulations. So Mr. Arias-Sardonis does not have that remedy at this point. Would you – I'm a little slow this morning, so just tell me. The response to Judge Berzon's question, that this seems to be a one-shot thing because he – so he had voluntarily departed. He's come back over and over. He was only denied the knowledge that he could voluntarily depart. So he would have left and he could come back once, but he's come back seven times. What is the answer to that? Well, the answer is that he – first of all, we can't say what would have happened necessarily to uphold the government's prosecution in this case. I think what Judge Berzon is essentially saying is the fact that – No, I understood what she said. Okay. I'm not quite sure what your response is. I'm just trying to make sure that I'm actually answering her question. The fact that – I think my underlying answer is the fact that the underlying removal is defective essentially invalidates the reinstatements. There is no reinstatement from a criminal perspective because the underlying removal is flawed. In a collateral attack context, the reinstatements are flawed, so there is no reentry essentially to prosecute him on now. So you're saying that the poisonous tree has an infinite amount of fruit? Until if they give him a new removal hearing, no. That's how they stop this procedure. It would take probably 20 minutes for an immigration judge to give Mr. Arias-Ardonas a new hearing. But – and we're talking about such a small proportion of cases that even collateral attacks lie in the underlying deportation. And, of course, this Court has noted that voluntary – the failure to advise a voluntary departure, the failure to have an opportunity to obtain that remedy is a basis for a collateral attack in a 1326 context. Where is Mr. Arias-Ardonas now? Is he – He's out of custody. He is living with his mother in Sonoma pending the results of these proceedings. So he's not in immigration detention either. He could be. No. Presumably they could bring an NTA against him tomorrow and remove him. Absolutely. I believe there's an agreement with the government not to do that. And the government, because of the length of time it takes to run the course in these appeals, rather than have him deported, wanted him here. But they did agree to his release, which was abundantly fair. Does the panel have additional questions about the application of moralis because – or the – They don't appear to be in. Okay. The only other point that I would ask the Court to consider is that the government did not mention the case relied on by the district court, that the misleading form that actually was erroneous violated Mr. Arias-Ardonas' due process rights. That's Walters v. Reno. It's cited in our papers. The government did not address that case. And I just ask this panel to affirm the district court in its entirety, finding both that the underlying removal violated due process and that the government can now – To do that, we don't have to reach the question of whether they had any affirmative duty to tell him anything, because the problem is that they told him something that was wrong. That's absolutely right. That is a critical distinction, is that the district court found this form is wrong, and it is wrong. And that – relying on Walters, that's what the basis of the Court's holding. The government does not address that, and so I just ask the Court to affirm the district court in its entirety. Thank you. Thank you. May it please the Court. The big issue that's raised by what the defense just said in this case is prejudice, because prejudice is part of every due process proceeding. In this case, in fact, the way that Mr. Arias closes his brief, as he says at the very last page, the process afforded Mr. Arias-Ardonas during his seven reinstatements is accordingly irrelevant. Now, that can't be the right solution here. Where you have a defendant who's been removed eight times, he may have a technical argument that the first removal should have been a pre-hearing voluntary departure, but that's completely wiped out by the fact that seven times he was removed again with absolutely no due process argument about those removals, no argument that he wasn't removable, and no other remedy that he could have been afforded, even if he had been given one. So the argument is essentially that he had that the reinstatements were summary and that he was being and that he actually never had a hearing because he was removed in absentia the first time improperly. Now, I understand that under Morales-Escuero, that won't get his reinstatements erased for removal purposes, but it isn't that he doesn't have a due process argument because he's never had a hearing. The bottom line is he's never had a hearing. Well, but the reinstatements were only summary because he didn't dispute them. He didn't dispute his removability. And he frankly, he couldn't have disputed it. The outcome would have been no different had he had a three-day-long hearing. It's a little different when somebody's facing a criminal charge. You know, what Samuel Johnson said, nothing concentrates a man's mind more powerfully than the knowledge he's about to be hanged in a fortnight. And it sounds as though you're saying too bad. Well, no. He's not facing criminal penalties for anything that he actually has a due process challenge to. Each of these seven removals by reinstatement. Well, they're all reinstatements of an original order that had a due process. Yes. But inextricable with a due process challenge is a showing of prejudice, which I don't think he certainly couldn't do in this case. So having run out of time, unless Your Honors have more questions, I'll simply ask for reversal of the district court order. Thank you. The case just argued is submitted for decision. We'll hear the next case, which is Camacho v. City of San Luis, Arizona.
judges: Shadur, Schroeder, Berzon